THE UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRYCE L. SPANGLER,

    Plaintiff,

vs.

CHARLIE WEND, et. al.,

    Defendants.

NO. C12-1196-RAJ-JPD

DECLARATION OF JUANITIA O'NEILL IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

JUANITA O'NEILL declares:

I am over the age of 18 years and competent to testify regarding the matters asserted herein. I have worked at the Skagit County jail for eighteen years. In my present position as a jail sergeant, I am responsible for running the shift, fielding calls, making decisions on booking and resolving inmate issues, including whether a Taser or other force may be used. I am also familiar with jail rules and policies.

I make the following declaration based upon my own personal knowledge:

Sergeants do most of their work in the booking area; however, I attempt to get into the housing areas once per shift. I usually do this while performing an escort duty. When I go into the housing areas, I look at the facilities and inmates in an effort to anticipate problems and

Declaration of O'Neill:      1
C12-1196-RAJ-JPD

PROSECUTING ATTORNEY
OF SKAGIT COUNTY
605 South Third Street
Mt. Vernon, Washington 98273
360-336-9460

have them dealt with as soon as possible. I also read the entries in the Jail Log to update myself on problems and violations that may affect my watch.

Except for disciplinary appeals, my personal contact with Inmate Spangler was incidental. If I walked into a pod that he was in and he said something, I would respond. Other than disciplinary hearings, I probably only had such contact with Inmate Spangler four or five times during 2011 and 2012.

I generally get involved in disciplinary matters on an appeal level – I do not recall having made any decisions to place Inmate Spangler in C-pod or a gray cell. Specifically, I heard several of Inmate Spangler's appeals. From these appeals and from reading previous entries in the Jail Log, which I did every shift, I was aware that Inmate Spangler was a disciplinary problem and that the nature of his violence took a decided turn toward self harm and violence toward jail staff in 2012.

Inmate Spangler never complained to me about sanitary conditions in any of the pods or cells. He never complained to me about a toilet failure.

The corrections deputies, who are the front line response to violations of jail rules, have authority to discipline inmates. The discipline may be as simple as a temporary lock-down in a cell. However, depending on the nature of the violation and history of violations, the corrections deputy may move an inmate to C-pod for disciplinary segregation, Isolation, or a gray cell. The gray cells are only used as temporary housing in such situations and the inmate is moved back to his cell or to a vacant cell as soon as possible. Sometimes, depending on the nature of the violation and whether there is a risk of violence to other inmates or staff, the detention may run for a handful of days.

When I am on duty, I ensure that inmates are safe and not being exposed to harmful conditions. Thus, before an inmate is housed in a gray cell, for example, I ensure that it is

clean. Inmate requests to use the shower, make telephone calls, receive legal visits, etc. are granted when doing do does not present a risk to the inmate or staff.

I recall that Inmate Spangler like to be housed alone. That was one of the reasons that he requested to be housed in C-pod. Basically, C-pod is the jail's intensive management unit in the sense that inmate privileges were controlled to a specific schedule. However, during most of the day, and inmate in C-pod could basically do what he wants – sleep, read – and not be bothered by other inmates.

Whenever Inmate Spangler submitted a kite – a request for something – I always forwarded it to the appropriate person. For example, he submitted numerous requests to be seen by medical staff. These were always forwarded to medical.

I am not aware that Inmate Spangler suffered from an inability to sleep in the jail. I understand that he complained about this to medical, but I never observed that he was unable to sleep. In fact, I observed have him sleeping without difficulty during the day and night while housed in a gray cell. I never saw him exhibit the effects of a migraine headache.

While Inmate Spangler made a lot of complaints, I am not aware that he ever complained about sanitation in any of the housing pods, toilet breakdowns, sanitary napkins, a lack of classification. Certainly, if any of these complaints had been raised, I would have directed a corrections deputy to determine whether the complaint had any validity.

Based on my observations of Inmate Spangler, I considered him to be a significant threat to jail safety. He was capable of changing from cooperative to violent over perceived slights.

I am not aware that Inmate Spangler ever ordered a magazine or book or that jail staff ever stopped him from receiving any magazine or book that was sent to the jail for his use.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge.

Declaration of O'Neill:                               3                           PROSECUTING ATTORNEY
C12-1196-RAJ-JPD                                                                 OF SKAGIT COUNTY
                                                                                 605 South Third Street
                                                                                 Mt. Vernon, Washington 98273
                                                                                 360-336-9460

Dated this 1st day of May, 2013 at Mount Vernon, Washington.

*Juanita O'Neill*
JUANITA O'NEILL

Declaration of O'Neill:
C12-1196-RAJ-JPD

4

PROSECUTING ATTORNEY
OF SKAGIT COUNTY
605 South Third Street
Mt. Vernon, Washington 98273
360-336-9460