THE UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRYCE L. SPANGLER,<br><br>    Plaintiff,<br><br>vs.<br><br>CHARLIE WEND, et. al.,<br><br>    Defendants. | NO. C12-1196-RAJ-JPD<br><br>DECLARATION OF TODD HINES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

TODD HINES declares:

I am over the age of 18 years and competent to testify regarding the matters asserted herein. I have worked as a corrections deputy for the Skagit County Sheriff's Office since 2005. Before that I worked as a corrections deputy at the Thurston County Jail between 1999 and 2005. My primary duty is jail rover. This requires me to work in the several housing areas performing food service, clothing exchange, minor maintenance, jail security and safety, pick-up and delivery of jail kites, etc. I also perform intake responsibilities and jail escort duties. I am familiar with use of the computer database that is used to maintain a record, known as the Jail Log, about inmate incidents in the jail.

I make the following declaration based upon my own personal knowledge:

Declaration of Hines:                      1
C12-1196-RAJ-JPD

PROSECUTING ATTORNEY
OF SKAGIT COUNTY
605 South Third Street
Mt. Vernon, Washington 98273
360-336-9460

Throughout 2011, I either observed or had contact with Inmate Spangler whenever I was assigned to rover duties in the North End. The North End consists of A-, B-, C-, D-, and E-pods, the areas where male inmates are housed. When I worked the North End, I would see Inmate Spangler between 12 and 15 times per shift. A typical day shift would include (1) hourly checks of each pod, (2) morning meal service, (3) noon meal service, (4) morning medication delivery, and (5) laundry exchange. I attempted to have a short conversation with each inmate at least once during my shift. This helps to gauge how the inmate is doing and would provide me with a feel for the mood of the inmate population.

Rovers do not make decisions on where an inmate would be housed. I certainly never made a housing decision for Inmate Spangler. However, if an inmate housed in general population was causing a disturbance that presented a significant violation of jail rules, I had authority to move the inmate to C-pod or to a gray cell as a part of a disciplinary action. Such disciplinary actions are subject to appeal that will be heard by a jail sergeant.

C-pod consists of ten cells, five on each of two levels, tiers. Metal stairs connect the two levels. The entrance to C-pod is on the lower level. Two showers are located in C-pod, one on each level. Each level has an open area that inmates may use when they are not in their cells.

Access to the cells in C-pod is controlled from North Control. Inmates can communicate with the deputy in North Control via an intercom in each cell. C-pod is generally used to house inmates who are serving time on disciplinary segregation. It is also used to house inmates who pose a danger to others and also, when space is needed elsewhere, inmates with minor mental issues.

In C-pod, an inmate trustee is assigned to clean the open areas of the pod, including the showers. The inmate trustee is required to sweep and mop the open area, clean tables, chairs,

and telephone, and scrub the shower on a daily basis. Other trustees performed similar duties in other pods. Debris and filth was not a problem in C-pod or in any other pod.

Spangler never complained to me about unsanitary conditions in any cell or pod or about a toilet failure.

I would walk through C-pod during my hourly sweep of the North End. I would look for broken equipment and structural damage and also look into each cell and shower. I would take a really good look around during my first walk through each day and again right after lunch.

I was aware that Inmate Spangler had broken a window in the jail. As a result, I usually made an effort to look for evidence of broken fixtures when I walked through an area where he was housed.

I have only see feces in a shower once during my work at the Skagit County Jail. That was in A-pod. I immediately obtained the necessary protective items and personally cleaned it up. I am not aware that this has been a problem in C-pod. Given the hourly walk-throughs and the schedule on which inmates in C-pod are released from their cells, the number of suspects would be few and it would be more likely that the perpetrator could be identified.

I have never seen a sanitary napkin in C-pod, or anywhere in the North End. Sanitary napkins are not available through the jail commissary. No male inmate should ever have a sanitary napkin. They are only given to female inmates on an as-needed basis. Female inmates do not have access to any of the male pods.

C-pod is usually quieter than other pods. Because C-pod is primarily used to segregate persons for disciplinary violations, it does not have a television. Televisions, which are allowed to be turned on between 9:00 a.m. and 9:45 p.m. in other pods, are the most noticeable source of noise in the jail. On a typical day, there is not a lot of screaming or yelling in C-pod. Because inmates are locked down while serving time on disciplinary segregation, they do not

Declaration of Hines:  
C12-1196-RAJ-JPD

3

PROSECUTING ATTORNEY  
OF SKAGIT COUNTY  
605 South Third Street  
Mt. Vernon, Washington 98273  
360-336-9460

have a lot of opportunity to confront other inmates. The inmates in C-pod are allowed to work out in their cells. They can also talk to inmates in other cells on their tier without difficulty.

Little or no noise enters C-pod from the adjacent D-pod, which is used to house sex offenders who would not be safe in general population. As a rule, D-pod is also much quieter than general population. Because sex offenders tend to have similar issues, they do not generally get into confrontations with each other.

Generally, the only housing area that is quieter than C-pod is Isolation, which consists of two cells and a day room.

Persons with mental issues that do not appear to invite self-harm are also housed in C-pod on an as-needed basis. Usually, such inmates are quiet. However, a few have tended to yell and scream for short periods of time. During 2011, one inmate who had cut up his landlord with a chain saw yelled and screamed for 2-3 hours at a time. This behavior did not continue for more than a week. Generally unless encouraged to act out, inmates with mental issues would wind down before a half-hour had passed. If such inmates continued to be disruptive, they would be moved to isolation or a gray cell where they could be monitored more closely.

Inmate Spangler never complained to me about conditions in C-pod, including noise, feces, or sanitary conditions. In my experience, he was usually the person who instigated routine noise in C-pod. Inmate Spangler would also incite others to flood their cells and he often yelled at other inmates or banged on the metal in his cell to make more noise.

Inmate Spangler did not complain to me about sleeping problems, and I never observed that he had a problem sleeping either in C-pod or in a gray cell.

The jail also maintains four cells in the booking area. These cells are used to temporarily hold persons awaiting booking, inmates who have proven too dangerous to be housed in other areas of the jail, and inmates determined to be suicidal. One of my duties as a rover was to assist in observing persons being detained in a gray cell. The timing of

observations depending on the reason for the detention. For example, suicidal inmates were checked at least every fifteen minutes. Others were usually observed at thirty minute intervals. Inmates are allowed out of the gray cells as requested to shower, use a restroom, make telephone calls, if allowed, etc. Records of checks and movement from the gray cells is recorded on a written log and in an electronic database.

Gray 13 is a particularly Spartan cell. It is used for persons on a suicide watch. Inmates in this cell are given a mattress and a suicide suit. The suicide suit is made of a thickly padded blanket with Velcro tabs. Inmates on suicide watch are not allowed any personal belongings, including underwear or sandals because of the risk that the inmate may use such items to injure himself. A toilet, consisting of a hole in the floor, is provided for the inmate. Staff will escort the inmate to a restroom upon request. The toilet is flushed from outside the cell upon the inmate's request or as needed.

Gray 7 and 9 are configured with a combination toilet-sink, a divider, and a bench. Inmate Spangler was not very tall. If he wanted to, he was able to sleep on the bench. If not precluded by security reasons, inmates being held in these cells would receive soap, shampoo, and a razor. If an inmate requested a shower, he would be escorted to a shower.

Mops, buckets, and other cleaning supplies are not allowed in the Gray cells. Usually, and as in Inmate Spangler's case, these items would be precluded by security reasons. Such inmate-use cleaning supplies would not be needed because the Gray cells are usually cleaned by a trustee after every inmate housing and then inspected before another inmate is placed in any gray cell. The cells floors and walls, which are painted white, are easily cleaned and any debris or filth would be readily noticeable. The only exception to the cleaning was if the previous inmates had been detained in the Gray cell for a few minutes while awaiting booking or transfer.

I never escorted an inmate into any Gray cell that was unclean.

Declaration of Hines:
C12-1196-RAJ-JPD

5

PROSECUTING ATTORNEY
OF SKAGIT COUNTY
605 South Third Street
Mt. Vernon, Washington 98273
360-336-9460

Inmate Spangler was not a slovenly inmate. He usually kept his cell clean and orderly. It made searching his cell relatively easy. He maintained this same level of personal cleanliness while in the Gray cells. I recall giving him the opportunity for a shower while he was housed in a gray cell. He responded, "I'm good," indicating that he did not need a shower that day.

In 2012, I worked the dayshift, between 9:00 a.m. and 5:00 p.m. Therefore, I never personally observed Inmate Spangler sleeping under the black lights that are used to illuminate the Gray cells during the night, but I did observe him sleeping in the Gray cells, without difficulty, under the daytime florescent lights.

I did work the night shifts in 2011. During that time, I was able to observe Inmate Spangler sleeping without difficulty under nighttime lighting in his cell in C-pod that was similar to the black lights used in the gray cells. Basically, the black light provided just enough light so that I could look into a cell to ensure that the inmate was present and safe.

Inmate Spangler never complained to me about conditions in the Gray cells. He did not complain about noise, cleanliness, concerns for his health, lights, or an inability to sleep.

Inmate Spangler was a volatile inmate. He could quickly shift from being cooperative to violent. The violence could be triggered by anything or, apparently, nothing. One thing that concerned me is that Inmate Spangler often appeared to plan his violent actions, especially those against jail staff.

I never observed that Inmate Spangler had any problem sleeping in the jail, whether he was in a cell in C-pod or in one of the gray cells. Further, I do not recall Inmate Spangler complaining to me about any medical issues, including headaches or migraines. If he did, I would have asked him to put the complaint in writing and I would have passed it on to medical.

Inmate Spangler never asked me about whether he could have a magazine. I never denied a magazine to him and never saw one addressed to him being delivered to the jail.

At no time have I ever seen Inmate Spangler hobbled by any sort of pain. Given my observations and his general attitude of wanting to be known as a tough guy, it would be a surprise to me if Inmate Spangler ever suffered from headaches or any other sort of pain.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge.

Dated this 2 day of May, 2013 at Mount Vernon, Washington.

_____
TODD HINES