UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRYCE L. SPANGLER,

Plaintiff,

v.

CHARLIE WEND, *et al.*,

Defendants.

Case No. C12-1196-RAJ-JPD

REPORT AND
RECOMMENDATION

*Pro se* plaintiff Bryce L. Spangler, proceeding *in forma pauperis* ("IFP") in this 42 U.S.C. § 1983 action, alleges constitutional violations of (1) his First Amendment right to access books and magazines; (2) his Fourteenth Amendment right as a pretrial detainee to conditions of confinement that do not constitute punishment; (3) his First and Fourteenth Amendment rights to access the courts to represent himself in a criminal matter to be free from retaliation for doing so. (Dkt. 43.)[1] Defendants Chief Charlie Wend, Sergeants Brian Schrader and Juanita O'Neill, and Corrections Officer Todd Hines are employees of Skagit County Jail,

---

[1] Mr. Spangler appears to have numbered his legal claims as "1st," "2nd," and "4th" with his second legal claim regarding conditions of confinement having three sub-claims. (Dkt. 43, at 1–5.) In addition, although Mr. Spangler contends that his conditions of confinement violate numerous constitutional provisions, his status as a pretrial detainee means the claim is resolved via the Fourteenth Amendment. *See Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40 (1977); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Mr. Spangler's retaliation claim, not separately numbered, is inferred from his allegation of being placed in C-pod, what he refers to as the "hole," because he chose to proceed *pro se* in a criminal matter. (Dkt. 43, at 2.)

REPORT AND RECOMMENDATION
PAGE - 1

1  where Mr. Spangler was detained prior to his guilty-plea conviction and subsequent
2  incarceration in state prison.² (Dkt. 8.) The Court recommends GRANTING defendants'
3  unopposed motion for summary judgment. (Dkt. 45.) Defendants have demonstrated that Mr.
4  Spangler's allegations are false and, because Mr. Spangler has declined to present any
5  evidence or argumentation to the contrary, defendants' facts are accepted as undisputed.
6  Alternatively, defendants are entitled to qualified immunity based on their reasonable conduct
7  to ensure safety and security at the jail in light of Mr. Spangler's violent and unruly behavior
8  and threats to himself and others.

## DISCUSSION

10  The Court grants summary judgment "if the movant shows that there is no genuine
11  issue of fact as to any material fact and the movant is entitled to judgment as a matter of law."
12  Fed. R. Civ. P. 56(a). If a party fails to properly address another party's assertion of fact, the
13  Court may "grant summary judgment if the motion and supporting materials—including the
14  facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).
15  The Court may consider any unopposed assertion of fact to be an undisputed fact for purposes
16  of the motion. Fed. R. Civ. P. 56(e)(2).

17  Defendants have demonstrated that Mr. Spangler's access to books and magazines was
18  not unreasonably restricted, he was not subject to substandard conditions of confinement, and
19  he was not prevented from accessing the courts to represent himself in a criminal matter and
20  did not encounter retaliation for doing so. They have supported their factual assertions with
21  exhibits and declarations by all the defendants as well as by Sergeant Ron Coakley, legal
22  assistant at the Skagit County Prosecutor's Office Judy Kiesser, and Operating Engineer of the
23  Skagit County Facilities Department Ronald Kitchener. (Dkts. 45-1–45-7.) The Court accepts
24  as undisputed defendants' exhaustive factual assertions that Mr. Spangler has not been

---

² The Court has corrected Mr. Spangler's misspellings of the surnames for Sergeant Schrader and CO Hines.

REPORT AND RECOMMENDATION
PAGE - 2

subjected to substandard conditions or unreasonable restrictions; rather, as a mentally unstable and frequently hostile inmate, Mr. Spangler has harmed or threatened to harm jail staff, other inmates, and himself while in C-pod disciplinary segregation or in the short-term "gray cells." For example, Sergeant Coakley noted—from personal knowledge and with support from jail logs and other written documentation—the following:

> Generally, inmates transferred to C-pod to serve time on disciplinary segregation make an effort to get off disciplinary segregation, avoid any or a further loss of good time, and get back to general population where they have more privileges.
>
> Inmate Spangler was an exception to this general rule. One, he frequently requested to be housed in C-pod where he had fewer privileges – no television and less time out of his cell – even when not on disciplinary segregation. Two, while in C-pod, he engaged in riot[s] – collective flooding of the cells and pods – and threatened and assaulted corrections deputies. Inmate Spangler, who was short and slightly built, may have preferred to be housed in C-pod because it is a small pond, which provided him with the opportunity to take advantage of other inmates and instigate others to violate jail rules while avoiding inmate fights he could not win.
>
> Despite the security measures in C-pod, Inmate Spangler frequently found ways to fabricate weapons, threaten corrections deputies, harass other inmates, and assault jail staff.

(Dkt. 45-5, at 5–6.)

### 1. Access to Books and Magazines

Mr. Spangler alleges that "[o]n or around March 2012 I kited the Sgt of Skagit Co. Jail & asked if we could have magazines sent in & received a kite back from a Sgt. whos[e] name I couldn't read stated 'we don't allow books or magazines to be sent to inmates in S.C.J." (Dkt. 43, at 1.) Defendants have shown that Mr. Spangler did not request a particular book or magazine; rather, he asked in a kite, "I would like to know the policy on receiving outside books & publications if I can order them from approved vendors." (Dkt. 45-5, at 66 (capitalization corrected).) Mr. Spangler was informed that in general his books would be placed into property due to his disciplinary status but was not denied any requested book or magazine. (*Id.*) Mr. Spangler had been placed in disciplinary segregation because he had

REPORT AND RECOMMENDATION
PAGE - 3

hidden weapons in his cell, and jail officers noted that Mr. Spangler had threatened to destroy law library resources unless his demands for commissary, female companionship, and coffee were met. (Dkt. 45-5, at 67–68.) Mr. Spangler faced reasonable restrictions on access to books and magazines for a simple, constitutional reason: he was in disciplinary segregation continuously during the period in question for repeatedly threatening the safety of others and himself. (*See, e.g.*, Dkt. 20-1, at 160, 162, 165, 171, 174, 175–77, 183–84, 196, 203, 260.) Moreover, Mr. Spangler does not specify how any of the defendants played a personal role in denying him access to any particular book or magazine.

### 2. Conditions of Confinement

Mr. Spangler alleges that the conditions in disciplinary segregation amounted to cruel and unusual punishment. (Dkt. 43, at 2–4). Although a pretrial detainee's assertion of conditions of confinement that amount to cruel and unusual punishment arise under the Fourteenth Amendment Due Process Clause, the same standards developed under the Eighth Amendment apply. *See Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). To constitute punishment that violates due process, the action must cause the detainee to suffer some harm or disability, and the purpose of the action must be to punish the detainee. *Demery v. Arpaio*, 378 F.3d 1020, 1029–30 (9th Cir. 2004). Routine discomfort inherent in the prison setting is inadequate: unconstitutional deprivations must deny a minimal civilized measure of life's necessities. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

Defendants have demonstrated that Mr. Spangler neither suffered harm nor was denied a minimal civilized measure of life's necessities. Mr. Spangler's migraines preexisted his placement in disciplinary segregation and his allegations of back pain were inconsistent with his contemporaneous behavior and cannot be attributed to jail conditions. (Dkt. 45, at 5–6.) In disciplinary segregation, Mr. Spangler was a chief instigator of excessive noise and unsanitary conditions by screaming, clogging up the toilets, threatening jail staff, and kicking doors and, when he complained about others being too noisy, jail officials provided him with relief. (Dkt.

45, at 6–8; Dkt. 45-5, at 26–27.)  Those limited periods that Mr. Spangler was placed in the "gray cells"—used for the temporary detention of incoming prisoners, suicidal inmates, and inmates who present a higher risk of harm to others than can be accommodated in C-pod—were justified by Mr. Spangler's suicidal or threatening behavior and defendants have demonstrated the conditions in the gray cells did not amount to a form of punishment.  (Dkt. 45, at 20.)

**3.    Access to the Courts to Represent Himself and Retaliation**

Mr. Spangler contends that he was denied access to the courts through restrictions on access to legal mail and to law books.  (Dkt. 43, at 4–5.)  The Court already dismissed this claim as *Heck*-barred because it affects the validity of his criminal conviction and there is no indication that the conviction has been overturned.  (Dkt. 41, at 3.)  Moreover, there is no indication that Mr. Spangler's legal mail was restricted, and the modifications on his access to law books were earned by conduct such as his threats to "kill" the books by dumping them in the water so they could "swim like fishes."  (Dkt. 20-1, at  196; *see* Dkt. 45, at 23–24; Dkt. 45-5, at 67–68.)

Mr. Spangler contends that he was placed in disciplinary segregation as retaliation for choosing to represent himself in a criminal proceeding.  This contention is demonstrably false.  Defendants have shown that Mr. Spangler requested and was placed in the disciplinary segregation of C-pod days before he was granted permission to represent himself *pro se*.  (Dkt. 45, at 21; *compare* Dkt. 20-1, at 113 (Nov. 5, 2011 jail log noting "SUBJECT BOOKED BY SWPD AND REQUESTED TO GO TO THE HOLE! SUBJECT FIN[]ISHED BOOKING AND WAS TAKEN TO C POD") *with* Dkt. 20-1, at 115 (Nov. 10, 2011 jail log noting "DEFENDANT GRANTED PRO[]SE STATUS ON THIS CASE ONLY, PER COURT ORDER").)

REPORT AND RECOMMENDATION
PAGE - 5

### 4. Qualified Immunity

Alternatively, defendants should be afforded qualified immunity because no reasonable jail official would have understood that placing Mr. Spangler in C-pod after he requested being placed there, and restricting his privileges due to repeated threatening, violent and disruptive behavior, would amount to a constitutional violation. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001). Although Mr. Spangler cannot substantiate his conclusory factual allegations, defendants have justified their conduct in response to dangerous conduct by an inmate who routinely violated jail policies.

## CONCLUSION

The Court recommends GRANTING defendants' unopposed motion for summary judgment on the merits because the undisputed facts show that Mr. Spangler's claims are meritless. Alternatively, defendants should be afforded qualified immunity. A proposed Order is attached.

DATED this 22nd day of October, 2013.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge